## A. P. MANLY v. WILLIAM B. CULVER'S HEIRS.

It would seem that the provisions of the Act to prevent frauds and fraudulent conveyances, of January 18th, 1840, (Hart. Dig. p. 835,) requiring voluntary conveyances of personal property to be proved by two or more witnesses and recorded, is modified by subsequent Acts which provide, in general terms, for the proof of all deeds, for record, by one of the subscribing witnesses; but in this case it was held that possession accompanied the deed.

Where a question whether the certificate of authentication, by the Clerk who admitted a deed to record in October, 1844, was sufficient, was made the ground of an objection to the admissibility of the deed in evidence, under the statute, (Hart. Dig. Art. 745,) without proof of its execution; the testimony of the officer before whom the deed was proved was received in the Court below, to establish the fact of proof of the deed before him, and explain the supposed defects in his certificate thereof, and this Court said it was a question whether such evidence was not admissible, under the statute; but the deed being admissible on other grounds, the point was not decided.

The case was considered to be different from that in which the proof is made before another officer; the certificate in such cases being the only authority upon which the deed is admitted to record.

Republic of Texas, Harris county.   Before me, W. R. Baker, Clerk in and for the county of Harris, this day came A. Wynns, to me well known, who upon being by me duly sworn, declared that A. J. Smith executed the foregoing instrument in his presence, as he declared, to be for the purposes therein contained; that he signed the same as a witness, and knows all the signatures thereto to be genuine.   Houston, Oct. 11, 1844.

W. R. BAKER, Cl'k H. C.

Then followed in the Transcript, without space, but in another paragraph:

Filed October 11, 1844, at 9 o'clock A. M., and recorded in Harris county Record of Deeds, Book J, pages 48 and 49.   To attest which I have hereunto set my hand and official seal at my office at the city of Houston.

[Seal of Court.]                    .       W. R. BAKER, Cl'k H. C.

In same connection Baker's testimony was introduced by the party offering the deed in evidence, in explanation of his failure to attach his official seal to his certificate of authentication, to the effect that at that time it was not his practice to attach his official seal to such certificates; Held, that the whole was one certificate with the seal of office annexed.*

---

* There did not appear to have been any suggestion, either before or after the Opinion was delivered, that the different parts of this certificate were dis-

Manly v. Culver.

Where slaves were conveyed to minor children and delivered to the father, in whose possession they remained, the children residing the meanwhile with the father, under his natural guardianship, the Statute of Frauds (Hart. Dig. Art. 2763) for the protection of creditors of, and purchasers from, a person in whom the possession of personal property has remained for the space of three years, in certain cases, does not apply.

It is within the discretion of the Court to permit a witness to be recalled at the instance of a party, after the argument to the jury has commenced, to restate his evidence in a particular about which a dispute as to his evidence has arisen; and such permission cannot be assigned as error.

Appeal from Bexar. Tried below before the Hon. Thomas J. Devine.

Suit commenced November 17th, 1851, by the heirs of William B. Culver, minors, by guardian, against A. P. Manly, to recover a slave Ben, and damages for his services. Plaintiffs alleged the particulars of their title, to wit: by deed of gift on the 22d day of April, 1844, from A. J. Smith to Martin S. and Marion P. Culver, and such other children as the said Culver and his wife, Eliza, should thereafter have; that the said Culver and wife did thereafter have another child, Martha Ann, whom petitioner also represents as guardian; that the said A. J. Smith then and there delivered the slaves to the said Culver, as trustee, to be managed and controlled for the use and benefit of his children, as aforesaid, during the period of their minority; that afterwards the said Culver conveyed away the said slaves, wholly contrary to his duties and obligations as trustee aforesaid, and in fraud of the rights of the heirs aforesaid; that one of the slaves, to wit: Ben, of the value of $1000, was so sold by the said Culver to one A. P. Manly, of the county of Fayette, A. D. ——. By amendment filed May 7th, 1853, it was alleged that Manly had had possession of said slave for seven years.

Defendant denied all and singular, &c.; admitted that he was in possession of the slave, and that he purchased him from the said Culver, denied that said Culver held said slave as trustee, and alleged the facts of Culver's possession and ostensible ownership for years, and that he, defendant, had purchased the slave without notice of any adverse claim, for a valuable considera-

tinct on the deed, and merely thrown together in the copying of the transcript. We do not know how the fact was; but our object in reporting this point is to draw attention to the importance of being particular in such cases, in making up the transcript.—REPS.

tion, and he claimed to be protected as an innocent purchaser. Defendant also alleged that Culver was the owner of said slaves, that he was largely indebted, and that the deed of gift from A. J. Smith to said Culver's children was part of a fraudulent device to defraud the creditors of said Culver; that Culver first conveyed them to Smith and Smith to Culver's children, with the said fraudulent design, and without consideration, the slaves remaining all the time in said Culver's possession.

The evidence was as follows: Deed dated April 22, 1844, from A. J. Smith, in consideration of one dollar in hand paid, and other good and sufficient causes, giving, donating, granting and forever quit claiming unto his two nephews Martin S. and Marion P. Culver, the children of William B. Culver and his wife Eliza Culver, and also to such children as the said W. B. and Eliza Culver may hereafter have, the following property, to wit: negro man Ben, &c., and his wife Henrietta; said slaves and their increase to be equally divided between the donees. It did not appear from the deed where it was executed; it recited that A. J. Smith was of Montgomery county; the deed was proved by a subscribing witness before W. R. Baker, Clerk of the County Court of Harris county, on the 11th day of October, 1844, and filed for record in that county and recorded same day. Plaintiffs then called Peyton Smith, who testified that he knew Ben first in 1836; that he was then in the possession of Culver and wife; knew nothing of his own knowledge, not being present at the time of the transfer, but often afterwards heard all the parties speak of the deed of gift, and say that it was a *bona fide* transfer, and that it was always so regarded and acted upon by all the parties to said transfer; that the slave was in the possession of Culver and wife from the time witness first knew him up to the time Manly bought him, except about two or three months, during which time A. J. Smith had possession of him, that A. J. Smith had possession of the slave Ben for two or three months preceding the transfer to plaintiff's wards; the slave was worth $1200 in 1841; worth about the same price in 1851, and his hire worth $15 or $20 per month; was worth more than ordinary negroes; that Manly bought Ben from Culver and wife. On cross-examination, witness stated that Culver and wife, the father and mother of plaintiff's wards, lived in Fayette county about one year before the purchase of the negro from them, and had the negro in their possession all that time. Manly was also a citizen of Fayette county, and purchased the negro there. It

10

was not generally or publicly known in Fayette county, that plaintiff's wards had any claim upon the negro.

Plaintiffs introduced another witness who testified that Ben was a likely negro and worth $1000; and another who testified that negroes hired from 1846 to 1853 for from $15 to $20 per month. Here plaintiffs closed.

Defendant gave in evidence a bill of sale, with general warranty, of the slave Ben, from W. B. Culver and Eliza Culver to defendant, price $600, date Sept. 3d, 1846; proved by several witnesses that they had known the slave in Manly's possession for several years, and never heard of any adverse claim until about the time this suit was commenced; proved by several witnesses that the negro was diseased, and not worth over $600; and proved by a witness that he drew the deed of gift from A. J. Smith to the children of W. P. Culver, and that he drew a bill of sale from Culver to A. J. Smith previous to the deed of gift from Smith to the children. It was admitted that the deed of gift from Smith to Culver's children was never recorded in Fayette county, where Manly resided and purchased the negro.

The charge of the Court is not important. The defendant requested the Court to charge the jury, among other matters not now important, that if the jury believed, from the evidence, that the negro in controversy was in the possession of Culver and wife in the county of Fayette, for more than four months before the sale to Manly, and Culver and wife exercising ownership and control over the negro as theirs, and the deed of gift under which the plaintiffs claim was not recorded in the county of Fayette, and the plaintiffs have failed to prove that Manly had any notice of the claim or title of plaintiff, then Manly is an innocent purchaser, and they must find for the defendant. (Refused.)

Verdict and judgment April 2d, 1856, for the plaintiffs for the value of the slave, $650, and damages at the rate of $145 per annum from Sept. 3d, 1846. Motion for new trial overruled, &c.

Bills of exceptions as follows. Plaintiff offered the deposition of William R. Baker, who testified that he was the County Clerk of Harris county on the 11th of Oct. 1844; that he had examined the deed of gift from A. J. Smith to plaintiff's wards; that said deed was duly proven before him at the date, as stated on the deed, by A. Wynns, on the 11th of Oct. 1844; that at the time of making the certificate it was not, nor had it been previously considered necessary or required by law, to attach the

seal of his office to the certificate; that it had not been the practice of the Clerk of Harris county to attach the seal to certificates of authentication: to the reading of which defendant objected for the following reasons, to wit: That a record could not be proved by parol testimony, and because an omission to complete an official act could not be supplied by the subsequent statements of the officer, showing why the law was not complied with; which objections were overruled, &c.

Plaintiff offered to read in evidence the following bill of sale or deed of gift: (Here followed the deed from A. J. Smith to plaintiffs.) It was certified as follows:—

REPUBLIC OF TEXAS, *Harris county.*

Before me, W. R. Baker, Clerk in and for the county of Harris, this day came A. Wynns, to me well known, who, upon being by me duly sworn, declared that A. J. Smith executed the foregoing instrument in his presence, as he declared, to be for the purposes therein contained; that he signed the same as a witness, and knows all the signatures thereto to be genuine. Houston, Oct. 11, 1844.          W. R. BAKER, Cl'k H. C.

Then followed in the transcript, without space, but in another paragraph:—

Filed October 11, 1844, at 9 o'clock A. M., and recorded in Harris county Record of Deeds, Book J, pages 48 and 49. To attest which I have hereunto set my hand and official seal at my office in the city of Houston.

[SEAL OF COURT.]          W. R. BAKER, Cl'k H. C.

To which evidence defendant objected, for the following reasons, to wit: First. Because the instrument was not so authenticated as to entitle it to be read in evidence without proof of execution. Second. Because there was no further proof of execution than the deposition of Baker, and the Clerk's certificate, the certificate of authentication being without the seal of the Court. Third. Because the deed was not so proven and recorded as to make it either actual or constructive notice to subsequent purchasers. Which objections were overruled, &c.

After the plaintiffs' counsel had closed his opening speech to the jury, and whilst the counsel for defendant was addressing the jury, he was stopped at the instance of plaintiffs' counsel, who denied that he was correctly stating the evidence of one of the

witnesses upon a particular point; and the Court being uncertain as to what the statement of the witness was, permitted him to be recalled, upon motion of plaintiffs' counsel, and requested to explain his statement; which was accordingly done, the witness confirming the recollection of plaintiffs' counsel; to all of which defendant excepted, on the ground that it was illegal in itself; that it was a surprise to defendant; that defendant, relying on said first statement, had read in evidence testimony, (setting it out,) which he otherwise would not have done; and that a witness can only be recalled to explain his testimony at the request of the jury.

*Hewitt & Newton,* for appellant. I. As to the admissibility of the deed of gift, and Baker's deposition. The deed was for the conveyance of slaves, upon consideration not deemed valuable in law, and should have been proved by two or more witnesses, and recorded in the county where the property was, and the certificate of authentication should have had the official seal of the Clerk attached. (Hart. Dig. Arts. 1452, 2765, 2766, 2784 *et seq.*, 2752, 2774; particular attention is requested to Art. 2777.) The registry Acts do not contravene the statute of frauds concerning the gift of slaves.

Baker's deposition does not cure the defect, and was not admissible against a third party, who is required only to look to the record.

II. The only ground upon which the defence of innocent purchase can be defeated, in this case, would be that possession remained with Culver and wife, the father and mother of the donees; but we conceive that no such doctrine has ever been held. (Hart. Dig. Arts. 2775, 1452; 2 Sug. Vend. 7 Am. Ed. 507, 527.) The case of Parks v. Willard, 1 Tex. R. 350, will not avail the plaintiffs. See also cases cited at 2 Sug. Vend. 508; 2 Story, Eq. 1502, 1505, 410; 1 Johns. Ch. R. 288; 1 Sumn. 506; 10 Peters, 177; 1 Hoffm. Ch. R. 153; 6 Tex. R. 318.

Cruise in his Digest gives it as an exception to the general rule, "that no act of the trustee shall prejudice the *cestui que trust;*" that where the trustee is in actual possession of the estate, and conveys it for a valuable consideration to a purchaser who has no notice of the trust, such person will be entitled to hold the estate against the *cestui que trust.*" (1 Cruise, Tit. 12,

Cha. 4, Secs. 9 & 10 ; and so in Hill on Trustees, 282–509–510.) Our statute of frauds is not unlike those of England, and most of the States of the American Union. And in adopting it we must have done so with the established constructions given it by judicial tribunals of high authority.

III. The Court erred in permitting the witness to be recalled during the argument of the case. A practice of this kind is most pernicious, and endangers the rights of every litigant who by inclination or force is brought into a court of justice. The jury are the exclusive judges of the statements made by the witness upon the trial of a cause, and after the evidence is closed and the argument entered into, it is too late for the counsel or the Court to desire witness to explain. The request must come from the jury.

*Hancock & West*, also, for appellant.

*I. A. & G. W. Paschal*, for appellees. I. The bill of sale was proved before Baker, Clerk of the Court where it was recorded ; besides the deposition of Baker was sufficient to carry the instrument to the jury.

II. The statute of frauds does not apply, because the contest is not between the donor and donee, but between the donee and a stranger.

III. There is no innocent purchaser of personal property, without notice. It was so expressly decided in several cases last Term.

WHEELER, J. It is not questioned that the deed of gift under which the plaintiffs claim, was an instrument permitted by law to be recorded, within the provision of the statute respecting the proof of recorded instruments. (Hart. Dig. 745; 6 Tex. R. 71.) But it is objected that it was not properly admitted in evidence, because not proved for record by two witnesses, and the seal of the Court was not attached to the certificate of authentication. The law, however, admitted it to record upon proof of its execution by one subscribing witness. (Hart. Dig. Art. 2777.) It is to be observed that the statute (Hart. Dig. Art. 745,) does not prescribe a certificate under seal, or any particular mode of authentication to admit the instrument in evidence ; but only that it shall have been recorded after being proven or acknowledged in the manner provided by law at the time of its registration.

It may be a question therefore, whether other proof than the certificate of the Clerk may not be received of the fact of its registration. If so, the proof was made by the deposition of the Clerk who recorded the instrument. This was not the case contemplated by Art. 2768 of the Digest, where the proof is made before an officer other than the Clerk who is to record the instrument. In that case the seal of office of the officer taking the acknowledgment is required to his certificate of authentication in order to admit the instrument to record. But if it be held, on general principles, that the fact of due registration upon the requisite proof must appear by the certificate of the recording officer, attested by his official seal, it does so appear in this case. The Clerk has stated and certified the fact of the requisite proof having been made, the filing of the deed for record, and the recording : these several matters are embraced in one certificate with the seal of office annexed. That must be deemed sufficient. It certainly was not necessary that a separate certificate should be made to each independent fact, when all could be as well embraced in one certificate. We are of opinion that the deed was properly authenticated to admit it in evidence, and it is therefore immaterial whether the other evidence admitted for the purpose of proving the instrument were rightly admitted or not, as the proof was made without it. The recording was only material as it enabled the plaintiffs to introduce the deed in evidence without proof of its execution : it was not necessary to vest in them the title to the property conveyed.

The statute of frauds has no application to the case, because possession did accompany the transfer of the title. The possession of Culver and wife was consistent with the right of their infant children, the plaintiffs, who were residing with them, (Hillebrant v. Brewer, 6 Tex. R. 45.) They had not the title, but only the possession in right of the plaintiffs. It is true they hold the possession for the use and benefit of the plaintiffs. But as respected the title they were not trustees. A trustee of a legal estate is one to whom the estate has been conveyed in trust. The title was not conveyed to Culver and wife in trust for the plaintiffs, but directly to the plaintiffs themselves. The question therefore as to how far one who is a bona fide purchaser for a valuable consideration without notice, from the trustee of the legal estate, will be protected even as against the *cestui que trust*, does not arise in this case. The defendant did not pur-

chase the legal title, or from one holding the legal title, but from one having the bare naked possession. To bring him within the principle contended for, he must have purchased the legal title: for even the purchaser of an equity is bound to take notice of, and is bound by a prior equity. (2 Story, Eq. Sec. 1502.) The defendant did not even purchase an equity. The bare possession of his vendors, without title, did not empower them to convey either the legal or equitable title, or afford the defendant's purchase the protection given to an innocent purchaser of the legal title. If he were a purchaser from the plaintiffs' vendor, the case might, perhaps, be different. But the mere possession of his vendors, without title, did not enable them to make a good title, as against the true owners, even to a purchaser for value, who was ignorant of the ownership or title of the plaintiffs.

It is of no consequence, that the slave had once belonged to Culver, as he had parted with his title and possession to the plaintiffs' donor before the making of the deed of gift, and there is no evidence impeaching the validity of the donor's title at the time of making the gift.

It was within the discretion of the Court to permit the witness to be recalled even after the argument had been commenced, and this action of the Court cannot be assigned as error. We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.